UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| VIRGINIA CICLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 07:4103-CV-C-NKL |
| | ) |
| CHASE BANK USA, N.A., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION**

## I. INTRODUCTION

Plaintiff Virginia Cicle ("Plaintiff") filed a two-count lawsuit against Defendant Chase Bank U.S.A., N.A. ("Chase"), alleging it should be held liable on a class-wide basis for imposing allegedly illegal penalties and for alleged violations of the Missouri Merchandising Practices Act, MO. REV. STAT. §§ 407.010 *et seq.* Plaintiff claims that she has a credit card account with Chase and that "Chase wrongfully imposed illegal . . . [interest] rate increases and finance charges on thousands of customers' accounts" (Compl., ¶ 9), and that Chase retroactively imposed rate increases and finance charges at the end of each billing cycle. (Compl., ¶4). Chase removed this action from state court based upon federal question jurisdiction and diversity jurisdiction.

Plaintiff filed her claims in the wrong forum. Plaintiff's claims arise out of a credit card cardmember agreement entered into between Plaintiff and Chase that establishes the terms of the credit card account. This agreement, as well as all of the agreements associated with members of the putative class, contain broad, mandatory arbitration provisions applicable to any claims that arise out of or relate in any way to the cardmember agreements. By accepting these terms,

3577208

Plaintiff waived her right to bring suit in state or federal court, and also waived her right to bring suit on behalf of a putative class.

Plaintiff's cardmember agreement states that Delaware law applies. Chase is a national bank with its principal office in Delaware and is therefore authorized by federal law to uniformly apply Delaware substantive law to all of its credit card accounts nationwide. Based upon the application of Delaware law, the Court should grant Chase's motion to compel arbitration of Plaintiff's individual claims and should stay this action.

## II. STATEMENT OF FACTS[1]

Plaintiff opened her credit card account (the "Account") with Chase on April 19, 2002. Affidavit of Donna M. Barrett, ¶ 3 (attached as Exhibit A) (hereinafter "Barrett Aff."). In April 2002, together with the original credit card, Chase sent Plaintiff a "Mastercard® and Visa® Cardmember Agreement" establishing the terms of the Account ("Cardmember Agreement"). Barrett Aff., ¶ 5 & Ex. 1. The Cardmember Agreement contains a provision that permits Chase to amend the Cardmember Agreement at any time:

> **23. Changing the Terms of This Agreement.** We may change any of the terms of this Agreement, including without limitation by adding new terms or by deleting or modifying existing terms. We will notify you of any such changes as required by law. Any changes to this Agreement can apply to all outstanding unpaid indebtedness and any new transactions on your Account. We may sell or transfer your Account and any amounts owed on your Account to another person at any time. If we do, this Agreement will still be in effect and any successor will have our rights in this Agreement to the extent assigned.

Barrett Aff., ¶ 6 & Ex. 1, ¶ 23. The Cardmember Agreement also provides that it is governed by federal law and the law of Delaware. Barrett Aff., ¶ 6 & Ex. 1, ¶ 25.

---

[1] For convenience of the Court, Chase has included this Statement of Facts which summarizes the Affidavit of Donna M. Barrett, attached as Exhibit A. Exclusive of this Statement of Facts, Chase respectfully suggests that its brief is in accordance Local Rule 7.1(f) and does not exceed fifteen (15) double-spaced typewritten pages.

The original Cardmember Agreement Plaintiff received contained a binding arbitration agreement and class action waiver written conspicuously in all capital letters. *See* Barrett Aff., ¶ 7 & Ex. 1, p. 11. The Cardmember Agreement was subsequently amended on multiple occasions pursuant to the terms of the Cardmember Agreement. Barrett Aff., ¶¶ 8-14; 21-23. In each instance, Chase notified Plaintiff of the proposed amendment to the Cardmember Agreement and provided Plaintiff with the opportunity to reject the proposed amendments. Barrett Aff., ¶¶ 9, 13, 21. Plaintiff did not reject any of the proposed amendments and continued to use and carry a balance on the credit card account after the amendments to the Cardmember Agreement were made. Barrett Aff., ¶¶ 10-11; 13-14; 22-23.

In October, 2004, Chase sent to Plaintiff a notification that her existing Cardmember Agreement was being replaced with a new Cardmember Agreement (the "New Cardmember Agreement"), which, like the original Cardmember Agreement, also included an arbitration agreement. Barrett Aff., ¶ 15 & Ex. 4. The New Cardmember Agreement contains a provision that permits Chase to amend the New Cardmember Agreement at any time. Barrett Aff., ¶ 16 & Ex. 4, ¶ 9. The New Cardmember Agreement also provides that it is governed by federal law and the law of Delaware:

> **GOVERNING LAW:** THE TERMS AND ENFORCEMENT OF THIS AGREEMENT AND YOUR ACCOUNT SHALL BE GOVERNED AND INTERPRETED IN ACCORDANCE WITH FEDERAL LAW AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF DELAWARE, WITHOUT REGARD TO CONFLICT-OF-LAW PRINCIPLES. THE LAW OF DELAWARE, WHERE WE AND YOUR ACCOUNT ARE LOCATED, WILL APPLY NO MATTER WHERE YOU LIVE OR USE THE ACCOUNT.

Barrett Aff., ¶ 16 & Ex. 4, ¶ 16 (emphasis in original).

As with the prior revisions to her Cardmember Agreement, Plaintiff was given the opportunity to reject the new arbitration agreement. Barrett Aff., ¶ 18. Plaintiff did not reject

the New Cardmember Agreement, or any of its terms, and she continued to use and carry a balance on the credit card after the effective date of the New Cardmember Agreement. Barrett Aff., ¶ 19-20.

In November, 2005, Chase sent to Plaintiff a notification that the New Cardmember Agreement was being amended and that the arbitration agreement was being replaced with a new arbitration agreement. Barrett Aff., ¶ 21. Pursuant its terms, and in compliance with Delaware law, Plaintiff had the option to reject the proposed changes. Barrett Aff., ¶ 26. Plaintiff did not reject these changes and instead expressly accepted the new terms by continuing to use her credit card. Barrett Aff., ¶¶ 27-28.

Just as in the original Cardmember Agreement, the amended arbitration provision in the New Cardmember Agreement was conspicuously written in all capital letters:

> **IMPORTANT NOTICE FOR CREDIT CARD CUSTOMERS ABOUT CHANGES TO YOUR CARDMEMBER AGREEMENT—PLEASE READ AND RETAIN FOR YOUR RECORDS**
>
> \* \* \*
>
> **ARBITRATION:** If not so already, the following replaces the section entitled **"ARBITRATION AGREEMENT":**
> **ARBITRATION AGREEMENT:** PLEASE READ THIS AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT SUCH AS THAT IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN THE ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENTATIVE

ACTIONS). OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED. EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED.

\* \* \*

**Claims Covered**. Either you or we may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy…arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account ("Claim"). This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. This Arbitration Agreement includes Claims that arose in the past, or arise in the present or the future. As used in this Arbitration Agreement, the term Claim is to be given the broadest possible meaning….

As an exception to this Arbitration Agreement, you retain the right to pursue in small claims court any Claim that is within that court's jurisdiction and proceeds on an individual basis. If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action. Neither you nor we agree to any arbitration on a class or representative basis, and the arbitrator shall have no authority to proceed on such basis. This means that even if a class action lawsuit or other representative action, such as that in the form of a private attorney general action, is filed, any Claim between us related to the issues raised in such lawsuits will be subject to an individual arbitration claim if either you or we so elect.

\* \* \*

**Procedures and law applicable in arbitration**….The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. If the law authorizes such relief, the arbitrator may award punitive damages or attorney fees….

**Costs**. We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon receipt of proof of payment. Additionally, if there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing….All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we

will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover all fees and costs from another party.

Barrett Aff., ¶ 22 & Ex. 5, ¶ 2 (emphasis in original).

Plaintiff filed this action in state court on March 30, 2007, and therefore the amended arbitration provision in the New Cardmember Agreement governs and should be applied by this Court.

### III. ARGUMENT

#### A. Delaware Law Applies

The parties contracted for the application of Delaware law in the Cardmember Agreement. The Court should therefore review the parties' arbitration agreement just as a court sitting in Delaware would, and, as demonstrated below, the Court should grant Chase's motion to compel arbitration.

The choice of Delaware law by the parties is unquestionably a valid one. Chase is a federally-chartered national banking association with its main office in Delaware; therefore, Chase is a citizen of Delaware. *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006). Due to the location of its main office, Chase selected and applied Delaware law to its customers' credit card accounts, including Plaintiff's. Plaintiff's credit card account is and always has been governed by Delaware law since it was opened in 2002 (Barrett Aff., ¶¶ 6 & 16), and, as Chase indicated in the Cardmember Agreement, Delaware is the location of Plaintiff's account. Barrett Aff., ¶ 16.

Courts generally enforce such a contractual choice of law. *PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320, 329 (8th Cir. 2001); *Baxter Intern., Inc. v. Morris*, 976 F.2d 1189, 1195-96 (8th Cir. 1992); *Saey v. Xerox Corp.*, 31 F.Supp.2d 692, 696 (E.D. Mo. 1998); *Armstrong Bus. Servs. v. H&R Block*, 96 S.W.3d 867, 872 (Mo. Ct. App. 2002). Courts applying Missouri or federal common law look to Section 187 of the Restatement (Second) of Conflict of Laws to evaluate a contractual choice of law provision.[2]

Pursuant to § 187(2), the parties' choice of law will apply unless the chosen state has no substantial relationship to the parties or their transaction, and there is no other reasonable basis for the parties' choice of law. *See* Restatement (Second) Conflict of Laws § 187(2)(a) (1971); *Doerhoff v. General Growth Properties*, No. 06-04099-CV-C-SOW, 2006 WL 3210502, at *5 (W.D. Mo. November 6, 2006); *Discover Bank v. Super. Ct. of L.A. County*, 134 Cal.App.4th 886, 890-91 (Cal. Ct. App. 2006) (applying § 187 and enforcing parties' Delaware choice of law clause as governing law rather than California law).

---

[2] Both federal question and diversity jurisdiction exist in this case. Under diversity jurisdiction, the Court should apply the laws of the forum state when analyzing the choice of law provision in the Cardmember Agreement. *See Surgical Synergies, Inc. v. Genesee Assocs., Inc.*, 432 F.3d 870, 873-74 (8th Cir. 2005). In deciding whether to honor a contractual choice of law clause, Missouri courts follow the Restatement (Second) of Conflict of Laws § 187 (1971). Courts have also relied on the Restatement (Second) of Conflict of Laws as a source of federal common law choice of law principals. *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir. 1991); *Edelmann v. Chase Manhattan Bank, N.A.*, 861 F.2d 1291, 1295 (1st Cir. 1988); *Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1003 (9th Cir. 1987); *Chuidian v. Philippine Nat'l Bank*, 976 F.2d 561, 564 (9th Cir. 1992). *See also Pfizer Inc. v. Elan Pharm. Research Corp.*, 812 F.Supp. 1352 1359-60 (D. Del. 1993) (under patent law federal question case "…federal courts are directed to apply a federal common law choice of law rule….Courts have relied on the Restatement (Second) of Conflict of Laws as a source of federal common law choice of law principals"); *In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 926 F.Supp. 736, 739 (N.D. Ill. 1996) ("both Illinois and federal common law look to the Restatement (Second) of Conflict of Laws…for deciding choice of law questions") (citations omitted); *Jackson . Chevron Corp. Long-Term Disability Org., Inc.*, No. 05-CV-3590 (WJM), 2006 WL 231595, at *4 (D. N.J. January 30, 2006) (federal common law adopts Restatement (Second) of Conflict of Laws under ERISA claim); *S.E.C. v. Infinity Group Co.*, 27 F.Supp.2d 559, 564 (E.D. Pa. 1998) (applying same to violation of federal securities laws); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (applying Restatement (Second) of Conflict of Laws to claims arising under 12 U.S.C. § 632); *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1997) (applying Section 187(3) as federal common law under admiralty case). *See also McDaniel v. Medical Life Ins. Co.*, 195 F.3d 999, 1002 (8th Cir. 1999) ("[a]lthough federal common law is applicable to this case, we may look to state law for guidance, provided state law does not conflict with [the federal statute's] underlying policies") (citations omitted).

If there is a substantial relationship to the chosen law, the analysis shifts to Section 187(2)(b). Section 187(2)(b) provides a three-step process where the court must determine: (1) which states' law would apply in default under Section 188; (2) whether the default state has a materially greater interest in the outcome of the particular issue than the chosen state; and (3) whether application of the chosen state's law would be contrary to a fundamental policy of the default state. *See Baxter*, 976 F.2d at 1196; *Doerhoff*, No. 06-04099-CV-C-SOW, 2006 WL 3210502 at *5. If neither state has a materially greater interest in the controversy, Missouri courts will defer to the parties' choice of law. *Baxter*, 976 F.2d at 1197 (citing Restatement (Second) Conflict of Laws § 187(2)(b) (1971)).[3]

Section 187(2)(a) is satisfied because Delaware is a reasonable choice of law for the parties' contract and has a substantial relationship to the parties' transaction. Chase is a citizen of Delaware. Delaware mandates "[a] revolving credit plan between a [Delaware-chartered] bank and an individual borrower ***shall*** be governed by the laws of [Delaware]." Del. Code Ann., tit. 5, § 956 (1988) (emphasis added). This alone establishes Delaware as a logical and reasonable choice to govern the agreement and creates a sufficient relationship with the state to satisfy § 187(2)(a). *See Discover Bank*, 134 Cal.App.4th at 891.

The three-pronged analysis under Section 187(2)(b) is satisfied as well. The "default" law under § 188 would be that of Delaware. In *Mackey v. MBNA Am. Bank*, 343 F.Supp.2d 966

---

[3] Courts in this Circuit and other courts throughout the country have given effect to similar choice of law provisions in credit card contracts and other consumer contracts. *See Nordyne, Inc. v. Int'l Controls & Measurements Corps.*, 262 F.3d 843, 845-46 (8th Cir. 2001) (affirming trial court decision that forum selection clause located on the reverse side of customer service invoice was valid and enforceable); *Mackey v. MBNA Am. Bank*, 343 F.Supp.2d 66, 969-70 (W.D. Wa. 2004) (enforcing Delaware choice of law clause in credit card agreement using the Restatement (Second) of Conflict of Laws § 188); *Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1256-57 (Del. 2001) (same); *Discover Bank*, 134 Cal.App.4th at 890-91 (enforcing parties' Delaware choice of law clause in credit card agreement based on the Restatement (Second) of Conflict of Laws § 187). *See also Lloyd v. MBNA Am. Bank, N.A.*, 27 Fed.Appx. 82, 84 (3d. Cir. 2002) (enforcing Delaware law clause in credit agreement under Delaware's "most significant relationship" test); *Samadi v. MBNA Am. Bank, N.A.*, 178 Fed.Appx 863, 865 (11th Cir. 2006) (enforcing Delaware choice of law provision in credit contract under Georgia's choice of law rules).

(W.D. Wash. 2004), the court enforced a Delaware choice of law provision in a credit card agreement using § 188 despite the fact that Plaintiff opened his account while a resident of Washington and made a majority of purchases on the account in Washington. *Id.* at 969-70. The court stated:

> MBNA is incorporated in Delaware and Delaware is its principal place of business. MBNA is a large credit card corporation and transacts with individuals throughout the United States. Given the nationwide scope of MBNA's transactions, it has an obvious interest in uniform interpretation of its credit agreements. MBNA presumably elected to locate in Delaware in part for its laws regarding credit card accounts; Delaware, therefore, has an interest in its laws being applied.

*Id.*

The same is true in this case. As a national bank, Chase similarly transacts business on a nationwide basis, and nationwide uniformity is called for under the National Bank Act. The National Bank Act permits Chase to charge interest at the rate allowed by the state of Delaware. 12 U.S.C. § 85. The Eighth Circuit has held that 12 U.S.C. § 85:

> ...adopts the entire case law of the state interpreting the state's limitations on usury; it does not merely incorporate the numerical rate adopted by the state....The intention of the national law is to adopt state law, and permit to national banks what the state law allows to its citizens and to the banks organized by it.

*First Nat. Bank in Mena v. Nowlin*, 509 F.2d 872, 876 (8th Cir. 1975) (citations omitted). As demonstrated below, the arbitration clause at issue in this case is enforceable under Delaware law, and there can be no argument that the application of Delaware law on this issue would violate the fundamental policy of that state.

### B. The Parties' Arbitration Agreement Was Properly Adopted And Amended

The arbitration agreement was included in Plaintiff's original Cardmember Agreement (Barrett Aff., ¶ 7), and Plaintiff signified her acceptance of these terms by using her credit card

3577208

account. *See* Barrett Aff., ¶¶ 10-11. The arbitration agreement was properly amended pursuant to the terms of the Cardmember Agreement and applicable law. Delaware expressly permits banks to amend credit card agreements as provided in Plaintiff's Cardmember Agreement: "[u]nless the agreement governing a revolving credit plan otherwise provides, a bank may at any time and from time to time amend such agreement in any respect...." Del. Code Ann tit. 5, § 952(a) (1999).

Courts in several jurisdictions have specifically upheld Chase's method of amending its credit card terms. *See e.g.*, *Grasso v. First USA Bank*, 713 A.2d 304, 310-11 (Del. Super. Ct. 1998) (same procedure for notification of amendments "comports with the statutory requirements" set forth in § 952 and was therefore a valid amendment); *Joseph v. MBNA Am. Bank, N.A.*, 775 N.E.2d 550, 553 (Ohio Ct. App. 2002) (same); *Discover Bank v. Vaden*, 409 F.Supp.2d 632, 639 (D. Md. 2006) (cardholder's likely receipt of notice of amended cardmember agreement containing arbitration clause and failure to opt out created binding arbitration agreement between the parties); *Pick v. Discover Fin. Servs.*, No. Civ.A. 00-935-SLR, 2001 WL 1180278, at *4 (D.C. Del. Sept. 28, 2001) ("defendant's mailing procedures and plaintiff's payment of his...bill" were adequate to effectuate binding arbitration provision added to agreement); *Marsh v. First USA Bank, N.A.*, 103 F.Supp.2d 909, 919-20 (N.D. Tex. 2000) (citing same); *Discover Bank*, 134 Cal.Rptr.4th at 891-98 (enforcing arbitration clause and class action waiver under Delaware law that was added to original cardmember agreement by notice of amendment sent in mail); *Edelist*, 790 A.2d at 1259 ("Delaware statutory law controlling Edelist's account permits MBNA to unilaterally amend agreements by notice and opt-out provisions"); *Makcey*, 343 F.Supp.2d at 970 (enforcing arbitration clause that was added to credit card agreement via notice sent in mail); *Johnson v. Chase Manhattan Bank USA, N.A.*, No.

603101/02, 2004 WL 413213 at *7 (N.Y. Sup. Ct. February 27, 2004) ("Courts have routinely upheld Delaware's statutory scheme of permitting banks to unilaterally amend Cardmember Agreements to add arbitration agreements, where, as here, the cardholder is given notice of the amendment, and the agreement is subject to an 'opt out' provision that permits the amendment") (citing cases); *Lloyd*, 27 Fed.Appx. at 84 (same); *Samadi*, 178 Fed.Appx at 866 (same).

C.  **The Arbitration Agreement Encompasses Plaintiff's Claims**

The parties' arbitration agreement in the New Cardmember Agreement falls within the ambit of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. The FAA governs any arbitration agreement that meets two basic conditions: (1) the agreement is in writing; and (2) the agreement "is in a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The arbitration agreement in this case satisfies these two conditions because it is in writing and it involves transactions between citizens of Delaware and Missouri.

When a plaintiff's claims fall within the scope of an arbitration clause, the FAA requires trial courts to compel arbitration and stay the litigation. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 22, n. 27 (1983) (citations omitted). Here, Plaintiff's claims fall squarely within the scope of the parties' arbitration agreement, which states in part:

> Either you or we may...elect mandatory, binding arbitration of any claim, dispute or controversy...***arising from or relating in any way to*** the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account ("Claim"). This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law...or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. This Arbitration Agreement includes Claims that ***arose in the past, or arise in the present*** or the future. As used in this Arbitration Agreement, the term Claim is to be given the broadest possible meaning.

Barrett Aff., ¶ 22 (emphasis added).

The United States Supreme Court has described the terms "arising out of or relating to" as signifying a "broad arbitration clause." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967); *see also Fleet Tire Serv. of North Little Rock v. Olive Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997) ("such a provision constitutes the broadest language the parties could reasonably use to subject their disputes to that form of settlement"); *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. 2003) (characterizing clause containing "arising out of or relating to" language as "broad arbitration clause"); *James Julian, Inc., v. Raytheon Serv. Co.*, 424 A.2d 665, 667 (Del. Ch. 1980) (citing same ); *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002) (stating "arising out of or in connection with" language is broad in scope and "signaled an intent to arbitrate all possible claims that touch on the rights set forth in the[] contract").

Plaintiff's claims clearly fall within the scope of the parties' broad arbitration agreement. In her first count, Plaintiff alleges "illegal penalty rate and finance charge increases in addition to…Late Fees and/or Overlimit fees." (Compl., ¶ 14). Plaintiff's second count similarly cites "illegal rate increases and assessment of additional finance charges." (Compl., ¶ 18d). All of these allegedly "illegal" charges are expressly permitted by the terms of the Cardmember Agreement. Plaintiff cannot dispute that such allegations arise out of or relate to the Cardmember Agreement.

**D.  The Arbitration Agreement Is Favored And Enforceable Under Applicable Law**

The resolution of Plaintiff's claims through arbitration is favored under federal law and state law in both Delaware and Missouri. The public policy of both Delaware and Missouri favors enforcement of agreements requiring arbitration. *Graham v. State Farm Mut. Auto Ins.*

*Co.*, 565 A.2d 908, 911 (Del. 1989) ("the public policy of this state favors the resolution of disputes through arbitration"); *see also SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758, 761 (Del. 1998) (same); *Malan Realty Investors, Inc. v. Harris*, 953 S.W.2d 624, 626 n. 4 (Mo. 1997) ("The Federal Arbitration Act and this state's Uniform Arbitration Act 'express the desire to enforce arbitration agreements as a matter of law to further the important public policy of resolving disputes without resort to the courts'") (citations omitted).

In interpreting the language of an arbitration clause, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *SBC Interactive, Inc.*, 714 A.2d at 761; *Moses*, 460 U.S. at 24-25. This is because of the "liberal federal policy favoring arbitration agreements." *Moses,* 460 U.S. at 24. Thus, a motion to compel arbitration should not be denied "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *United Steelworkers of Am. v. Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

Courts across the country have routinely enforced arbitration provisions in similar credit card contracts and other consumer contracts.[4] Missouri is no exception. *See e.g., Swain v. Auto Services, Inc.*, 128 S.W.3d 103, 107-08 (Mo. Ct. App 2003) ("The agreement to arbitrate in this service plan clearly is an adhesive contract....As to the agreement to arbitrate generally, however, we find that an average person would reasonably expect that disputes arising out of an

---

[4] *See e.g., Edelist*, 790 A.2d at 1260 (Del. 2001) (stating Delaware law "recognizes that arbitration agreements, even in adhesion contracts, can effectively waive the right to a jury trial") (citing *Graham v. State Farm Mut. Auto Ins. Co.*, 565 A.2d 908 (Del. 1989)); *Sagal v. First USA* Bank, 69 F.Supp.2d 627, 632 (D.C. Del. 1999) aff'd, 254 F.3d 1078 (3d Cir. 2001) (enforcing arbitration provision in cardmember agreement); *Mackey*, 343 F.Supp.2d at 970 (same); *Discover Bank*, 134 Cal.Rptr.4th at 891-98 (enforcing same); *Lloyd*, 27 Fed.Appx. at 84 (same); *Samadi*, 178 Fed.Appx at 866 (same); *Dorsey v. H.C.P. Sales, Inc.*, 46 F.Supp.2d 804, 807-08 (N.D. Ill. 1999) (court enforced arbitration clause in retail installment contract and security agreement for various home improvements); *Stiles v. Home Cable Concepts, Inc.*, 994 F.Supp. 1410, 1414 (M.D. Ala. 1998) (court enforced arbitration clause in credit card agreement); *Lackey v. Green Tree Fin. Corp.*, 498 S.E.2d 898, 901-05 (S.C. Ct. App. 1998) (citing same); *Green Tree Agency, Inc. v. White*, 719 So.2d 1179, 1180 (Ala. 1998) (court enforced mandatory arbitration clause in mobile home purchase installment contract).

agreement like this might have to be resolved in arbitration. An agreement choosing arbitration over litigation, even between parties of unequal bargaining power, is not unconscionably unfair").

The FAA provides that written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is no question that the arbitration agreement, including the class action waiver, are valid under Delaware law. Numerous courts throughout the country have enforced similar provisions when applying Delaware law. *See e.g.*, *Edelist*, 790 A.2d at 1260-61; *Discover Bank*, 134 Cal.Rptr.4th at 893 (arbitration provision and class action waiver added to credit card agreement by amendment were "enforceable[] and not unconscionable under Delaware law"); *Pick*, No. Civ.A. 00-935-SLR, 2001 WL 1180278, at *5 ("…it is generally accepted that arbitration clauses are not unconscionable because they preclude class actions") (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991)); *Johnson v. West Suburban Bank*, 225 F.3d 366, 377 (3d Cir. 2000); *Chase Manhattan Bank*, No. 603101/02, 2004 WL 413213 at *9-10 (enforcing Chase arbitration provision with similar terms to provision at issue); *Lloyd*, 27 Fed.Appx. at 84 (rejecting plaintiff's argument that arbitration agreement is unconscionable because it bars classwide relief) (*citing West Suburban Bank*, 225 F.3d at 369)); *see also Leason v. Merrill Lynch, Pierce, Fenner and Smith*, No. 6914, 1984 WL 8232, at *3 (Del. Ch. August 23, 1984) (enforcing arbitration clause despite plaintiff's argument that doing so would "deprive the members of the class of an opportunity to seek redress for similar wrongs").

*Edelist* is the leading Delaware authority and is analogous to the instant case. There, the credit card holder filed a putative class action against MBNA for state statutory and common law

claims arising out of the cardmember agreement. *Edelist*, 790 A.2d at 1251. MBNA moved to compel arbitration based on provisions that were subsequently added to the original cardmember agreement through amendment. *Id.* The arbitration clause at issue in *Edelist* stated in relevant part:

> **Arbitration:** Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration section or the validity of the entire Agreement or any prior Agreement shall be resolved by binding arbitration." [sic]....
>
> At your written request, we will advance any arbitration filing fee, administrative and hearing fees which you are required to pay to pursue a Claim in arbitration. The arbitrator will decide who will be ultimately responsible for paying those fees....
>
> You will not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim.
>
> THE RESULT OF THIS ARBITRATION SECTION IS THAT, EXCEPT AS PROVIDED ABOVE, CLAIMS CANNOT BE LITIGATED IN COURT, INCLUDING SOME CLAIMS THAT COULD HAVE BEEN TRIED BEFORE A JURY, AS CLASS ACTIONS OR AS PRIVATE ATTORNEY GENERAL ACTIONS.

*Id.* at 1253.

Applying Delaware law, the *Edelist* court enforced the arbitration provision because plaintiff's "surrender of [the] class action right was clearly articulated in the arbitration amendment....The Court [found] nothing unconscionable about it and finds the bar on class actions enforceable." *Id.* at 1261.

Just like the arbitration clause in *Edelist*, the arbitration agreement in this case, and the class action waiver included within, were conspicuously articulated to Plaintiff in all capital letters in the original Cardmember Agreement and in the amended arbitration agreement that was

subsequently adopted by the parties. The terms of the arbitration agreement in *Edelist* were similar to those at issue in this case. Both provide for advance payment of arbitration fees, as well as recovery of those fees as determined by the arbitrator. Moreover, while not specifically mentioned in *Edelist*, the arbitration agreement in this case further allows for the recovery of attorneys' fees and punitive damages, as allowed by applicable law. The arbitration agreement between Plaintiff and Chase is enforceable under Delaware authority.

Even if the Court were to analyze the arbitration agreement under Missouri law (which would be inappropriate for the reasons stated above), the result would be the same. While some courts applying Missouri law have found arbitration agreements with class action waivers unconscionable, those decisions are both factually and legally distinguishable. *See Whitney v. Alltel Communications*, 173 S.W.3d 300 (Mo. Ct. App. 2005); *Doerhoff v. General Growth Properties, Inc.*, No. 06-04099-CV-C-SOW, 2006 WL 3210502 (W.D. Mo. Nov. 6, 2006); *Sprague v. Household Int'l*, 473 F.Supp.2d 966 (W.D. Mo. 2005).

In *Whitney*, the court was concerned in part with the manner by which the plaintiff became subject to the arbitration provision. Although he had been a customer of Alltel since 1995, it was not until August 2000 that Alltel added its arbitration provision. *Whitney*, 173 S.W.3d at 304. Further, quoting the trial court, *Whitney* emphasized the fact that "the arbitration provision at issue was in fine print on the back side of the sheet sent to plaintiff and was insufficient to call its customers' attention to their waiver of the substantial rights...." *Id.* at 308-09.

*Doerhoff* cites similar language: "[p]rocedurally, the Arbitration Provision was presented in fine print and given in a 'take it or leave it' fashion." *Doerhoff*, No. 06-04099-CV-C-SOW, 2006 WL 3210502, at *6. This court also noted for that specific arbitral provision that "the

Claimant in an arbitration action is required to pay the filing, administrative, and hearing fees for any claim initiated." *Id.*[5]

By contrast, the arbitration agreement in this case was agreed to by Plaintiff and Chase when Plaintiff first opened her credit card account. Any time the terms of that arbitration agreement were amended, Chase notified Plaintiff in clear and conspicuous language of the modifications and provided her with the right to object to those amendments. The arbitration clause and class action waiver in the original and amended Cardmember Agreement begin: "IT IS IMPORTANT THAT YOU READ THIS ARBITRATION AGREEMENT CAREFULLY...."

The arbitration agreement at issue in this case is further distinguishable procedurally because: (1) Chase is required to reimburse the claimant for the initial arbitration filing fee up to $500; (2) Chase is required to pay fees of the arbitrator and arbitration administrator for the first two days of hearings; and (3) the arbitrator has the ability to award "all fees and costs" with respect to the arbitration "from another party."

Substantively, *Whitney* disapproved Alltel's arbitration provision primarily because it "required the customer to bear the costs of arbitration" which were so "prohibitively expensive as to preclude...an aggrieved party from seeking redress" for his or her injuries. *Whitney*, 173 S.W.3d at 313-14. In reaching this conclusion, the Court relied on the provision's prohibition of "an award of any incidental, consequential, punitive, or exemplary damages as well as attorneys' fees." *Id.* at 313.

---

[5] The facts in *Sprague* are inapposite with regard to alleged procedural unconscionability. There, the Court found indicia of procedural unconscionability because defendants "discouraged careful consideration and critical thinking, and...rushed the Plaintiffs through the process of signing" the contract. *Sprague*, 473 F.Supp.2d at 972-73. There is no evidence at all that Chase exerted any pressure on Plaintiff to accept or reject the terms of the Cardmember Agreement or the subsequent amendments thereto. Furthermore, this Court ultimately found the arbitration provision in *Sprague* was enforceable and was not unconscionable, so long as the defendant agreed to pay the costs of the arbitration. *Id.* at 977.

*Doerhoff* stated "[substantively, the terms of the Provision effectively preclude class treatment of claims that often involve a few dollars per claimant. The Court believes that this case is similar to *Whitney,* in that '[by] itself, such a claim would not be economically feasible to prosecute.'" *Doerhoff,* No. 06-04099-CV-C-SOW, 2006 WL 3210502, at *6 (citing *Whitney*, 173 S.W.3d at 309). *See also Sprague,* 473 F.Supp.2d at 973 (similarly stating "customers who have suffered the loss of a relatively small sum of money have little incentive to proceed individually against [defendant]").

By contrast, the arbitration agreement at issue in this case does not discourage the pursuit of low dollar-value claims in the arbitral form. Unlike the clauses in the above cases, the arbitration agreement agreed to by the parties here allows an arbitrator to award "any damages or other relief provided for under applicable law....[and] [i]f the law authorizes such relief, the arbitrator may award punitive damages or attorney fees."[6] Furthermore, pursuant to the parties' arbitration agreement in this case, the claimant is not forced to shoulder the expense of arbitration. A third distinguishing characteristic of this Cardmember Agreement is the exception

---

[6] *See e.g. Jenkins v. First Am. Cash Advance of Ga., LLC,* 400 F.3d 868, 878 & n.8 (11th Cir. 2005) (upholding provision because "[t]he Arbitration Agreements expressly permit[ed] [the plaintiff] and other consumers to recover attorneys' fees and expenses 'if allowed by statute or applicable law,'" and required the company to "advance [the plaintiff's] arbitration expenses, such as filing and administrative fees, if she submit[ed] a written request"); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC,* 379 F.3d 159, 175 & n. 19 (5th Cir. 2004) (arbitration provision "does not leave the plaintiffs without remedies or so oppress them as to rise to the level of unconscionability" in part because "an arbitrator would presumably be empowered to award [attorneys' fees] in enforcing a [Louisiana Unfair Trade Practice Act] plaintiff's substantive rights"); *Snowden v. Checkpoint Check Cashing,* 290 F.3d 631, 638 (4th Cir. 2002) (rejecting argument that small dollar claim under TILA was not economically viable unless brought on a class-wide basis because of "the fact that attorney's fees are recoverable...in a TILA action"); *West Suburban Bank,* 225 F.3d at 373-74 (noting plaintiff's ability to recover attorney's fees in arbitration, the court stated "when the right made available by statute is capable of vindication in the arbitral forum, the public policy goals of that statute do not justify refusing to arbitrate"); *Strand v. U.S. Bank Nat'l Ass'n ND,* 693 N.W.2d 918, 926 (N.D. 2005),("All substantive remedies available to Strand in a judicial action, including an award of attorney fees, would be available in arbitration").

to the arbitration mandate which allows the claimant to pursue a small claims court action on an individual basis.[7]

## IV. CONCLUSION

For the reasons set forth above, the Court should grant Chase's motion and compel arbitration of Plaintiff's individual claims in this action. The Court should stay this action pending conclusion of the arbitration.

Respectfully submitted,

THOMPSON COBURN LLP

By:/s/ Christopher M. Hohn
    Christopher M. Hohn
    One US Bank Plaza, Suite 2600
    St. Louis, Missouri 63101
    314-552-6000
    FAX 314-552-7000

Attorneys for Defendant
Chase Bank USA, N.A.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system this 20th day of June, 2007, to the following:

Matthew A. Clement
Timothy Van Ronzelen
Cook, Vetter, Doerhoff & Landwehr PC
231 Madison St.
Jefferson City, MO 65101

                                       /s/Christopher M. Hohn

---

[7] *See Pulver v. 1st Lake Props., Inc.*, 681 So.2d 965, 970 (La. App. 1996) (small claims court is often a *better* option than a class action for the resolution of small claims because "[c]ertification of…a class [can] promote complicated lengthy legal embattlement," while small claims court allows parties to resolve disputes "expeditiously and with minimum costs and fees").

3577208          - 19 -

Case 2:07-cv-04103-NKL   Document 11   Filed 06/20/07   Page 19 of 19