# Exhibit 1



**MASTERCARD® and VISA®**
**CARDMEMBER AGREEMENT**

### GENERAL TERMS

**1. Meaning of Words Used in This Agreement.** "Agreement" means this document (which has a binding arbitration provision that may affect your right to go to court, your right to a jury trial, and your right to participate in a class action or other representative action) and the Pricing Schedule (which may initially appear on your card carrier containing your credit card), as either may be amended from time to time. In this Agreement, "you," "your" or "yours" means each person who applied for the Visa or MasterCard Account. "We," "us" or "our" means Chase Manhattan Bank USA, National Association - the issuer of this Account. "Account" means the Visa or MasterCard Account for which you were issued cards and checks imprinted with your Account number. "Authorized User" means any person to whom you have given permission to use your Account. "Card" means the Visa or MasterCard card(s) issued in connection with your Account. "Check" means Convenience Checks. "ATM" means Automated Teller Machine. "Our check" means a check drawn on us or one of our affiliates. "Seller" means any merchant, insurance company or its agent or broker.

**2. Services of This Account.** This Account may be used for Purchases from any Seller that accepts the Card and for Advances. You agree not to make or permit to be made any illegal transactions on your Account through the use of a Card, a Check or any other manner.

**3. To Use Your Card.** You must sign the panel on the back of your Card. Authorized Users of any additional Card(s) should sign their names on the panel on the back of those Cards. For Purchases, you will have to sign a sales slip that has your name, the Seller's name, and your Account number on it, unless you let the Seller complete the sales slip for you.

**4. Your Responsibilities for This Account.** You are responsible for all amounts owed on this Account, whether charged by you, a person whom you permit to obtain credit on your Account (such as by lending a person your Card), or any other person using a Card or your Account with actual, implied or apparent authority. You agree that anyone who is issued a Card for your Account (or anyone to whom you lend or give your Card) is authorized to make charges to your Account to the same extent as you and we are not responsible for controlling such use of your Account. Such authority will continue until you revoke it by notifying us, obtaining the Card in your physical possession, and if it is a Card issued to an Authorized User, by also cutting it in half. If you receive a benefit from the use of your Card or Account by another person, such use will not be considered unauthorized. We may require Authorized Users to repay the amount owed for the charges they make. If more than one person signed the initial application or otherwise accepts or agrees to be obligated on the Account and continues to be listed as a joint account holder in our records (joint account), each of you is bound by this Agreement and is responsible for payment of all amounts owed under this Agreement.

1

**5. Your Credit Line.** Your credit line is the most you may owe on your Account at any time. You will be told the amount of your credit line. You may not use your Account in any way that would cause you to go over your credit line. You may also be asked to immediately pay for any amount over your credit line. We may change your credit line or separate the amount of your credit line into available credit for Purchases and Advances. If the credit line is changed or limited, you will be notified.

**6. Overlimit Fee.** If your Account balance (including any Finance Charges and any fees and charges owed on your Account) is over your credit line at the end of a billing cycle, there will be an Overlimit Fee as disclosed in Pricing Schedule Box 10. This fee will be imposed only once during the billing cycle, but will be imposed in each billing cycle that you are over your credit line even if we authorize the transaction that causes your credit line to be exceeded.

**7. Annual Fee.** If there is an Annual Fee for the Account, you will be billed the Annual Fee disclosed in Pricing Schedule Box 7 whether or not you have used the Account until the Account is closed and paid in full. If your Annual Fee has been waived, it will be billed when the waiver period has ended, and will then continue to be billed on an annual basis. The Annual Fee is non-refundable.

**8. Payments.** All payments must be made and received by us in accordance with the payment instructions that appear on or with your monthly statements and accompanying envelopes. Payments must be in United States Dollars and drawn on a United States financial institution or the United States Postal Service. In our sole discretion we will decide how to apply your payments. Although we post your payments as of the business day we receive them as described on your statements, your Total Available Credit may not be restored for up to 15 days after we post your payment. Any payment check which you send us for less than the full balance due that is marked "paid in full" or with a similar notation or that you otherwise tender in full satisfaction of a disputed amount (conditional payments), must be sent to us at the conditional payments address listed on your monthly statement. We reserve all our rights regarding such checks. For example, if it is determined there is no valid dispute or if any such check is received at any other address, we may accept the check and you will still owe any remaining balance. We may refuse to accept any such check by returning it to you, not cashing it or by destroying it. All other payments should be sent to the regular payment address shown on your monthly statements.

**9. Immediate Phone Payment Fee.** We may in our discretion permit you to make payments by authorizing us on your behalf to transfer funds from a deposit or other account to your Account. For each such payment, you will be charged an Immediate Phone Payment processing fee in the amount disclosed in Pricing Schedule Box 10.

**10. Returned Payment Fee.** You will be charged the fee disclosed in Pricing Schedule Box 10 for each check or payment instrument given in payment which is returned to us or which we cannot process under our normal operating procedures.

**11. Minimum Payment.** You may pay either the Minimum Payment or any amount over that up to the New Balance. Your Minimum Payment must be in accordance with our payment instructions and received by the time of day on the Payment Due Date shown on your statement. Your Minimum Payment is calculated by taking the New Balance and deducting any amounts which you have properly notified us are in dispute (see notice "In Case of Errors or Inquiries About Your Bill") and multiplying that amount by the minimum payment percentage shown in Pricing Schedule Box 10. If the resulting amount is more than the minimum payment minimum dollar amount shown in Pricing Schedule Box 10, it will be reduced to the next lowest dollar. If the resulting amount is less than that minimum payment minimum dollar amount, it will be increased to that minimum payment minimum dollar amount. If the Minimum Payment as calculated herein is less than the Total Finance Charge as shown on your statement, your Minimum Payment for that statement instead will equal the Total Finance Charge (rounded up to the nearest dollar). We add to your Minimum Payment any Past Due Amounts and, at our option, any amounts in excess of your credit line. The Minimum Payment will never be more than the New Balance.

**12. Late Payment Fee/Charge.** There will be a Late Payment Fee/Charge in the amount disclosed in Pricing Schedule Box 10 if we do not receive in accordance with our payment instructions the Minimum Payment by the time of day on the Payment Due Date shown on your monthly statement.

**13. If Your Cards or Checks are Lost or Stolen.** If someone used your Card(s) or Checks without your permission or if they are lost or stolen, contact us immediately. You may call or write. Call toll free 1-800-237-7400 anytime from all 50 states, Washington, D.C., Puerto Rico, and the U.S. Virgin Islands. For all other locations call 813-884-2997 collect. Write to: P.O. Box 15919, Wilmington, DE 19850-5919. You may be liable for the unauthorized use of your Card(s) in an amount not to exceed $50 in any case where your Card(s) are lost or stolen and you fail to contact us within twenty-four (24) hours. You will not be liable for such unauthorized use if you contact us in the manner described immediately above within the twenty-four (24) hour time limit or before the unauthorized use occurs.

**14. Card Replacement Fee.** You may be charged a Card Replacement fee in the amount disclosed in Pricing Schedule Box 10 for any special services such as obtaining any Card on an expedited basis.

**15. If Your Card or Check is Refused.** We are not responsible if a Seller, Bank or ATM refuses to honor your Card or Check. Although you may have credit available, we may not authorize credit for a particular transaction due to operational difficulties or, in our discretion, for any other appropriate reason.

Transactions made above a certain dollar amount may require authorization before the transaction is approved. The number of transactions you make in one day may be limited by us. This is done for security reasons, and as such, the details of how the authorization system works are not listed in this Agreement. Neither we nor our agents will be responsible if authorization for

Case 2:07-cv-04103-NKL   Document 11-2   Filed 06/20/07   Page 3 of 10

transaction is not given. If your Account is overlimit or delinquent, credit authorization for transactions may be declined.

**5. Monthly Statements.** Each month there is a debit or credit balance of more than $1, or a Finance Charge has been imposed on your Account, we will mail you a statement.

**7. Copy Fee.** You will be charged the fee disclosed in Pricing Schedule Box 10 for each original or copied sales slip, copied statement, and copy of any other record or document that you request. The fee is not owed if a request for such record or document reveals a billing error or unauthorized use on your Account as defined by the Federal Reserve Board's Regulation Z.

**18. Billing Errors.** If you have a dispute about your Account, notify us as soon as possible. Please read the notice "In Case of Errors or Inquiries About Your Bill." This notice explains your legal rights about billing errors and defenses under Federal Law and how you must notify us. If any adjustment is made, we will credit your Account.

**19. Currency Conversion.** If you effect a transaction with your MasterCard card or Visa card in a currency other than U.S. dollars. MasterCard International Incorporated or Visa International, as appropriate, will convert the charge into a U.S. dollar amount. MasterCard International or Visa International will use its conversion procedure, which is disclosed to institutions that issue MasterCard cards or Visa cards, respectively. Currently, the currency conversion rate used by MasterCard International or Visa International to determine the transaction amount in U.S. dollars for such transactions is generally either a government-mandated rate or a wholesale rate determined by MasterCard International or Visa International, as appropriate, for the processing cycle in which the transaction is processed, increased by an adjustment factor established from time to time by MasterCard International and Visa International, respectively. The currency conversion rate used by MasterCard International or Visa International on the date your transaction is processed by MasterCard International or Visa International may differ from the rate that would have been used on the purchase or transaction date or the cardholder statement posting date. The adjustment factor that is part of the currency conversion rate is one percent, but may be changed from time to time by MasterCard International or Visa International, respectively. For each such transaction converted into a U.S. Dollar amount that must be converted back into a foreign currency because of a refund or other reversal of the transaction, the same currency conversion rate formula and procedures will be used.

**20. Foreign Currency Transaction Fee.** For each transaction in a foreign currency, we will charge a foreign transaction fee equal to the percentage amount shown in Pricing Schedule Box 10 multiplied by the converted transaction amount. This fee may be abbreviated as "For. Tran. Fee."

**21. Authorization to Provide Information.** You authorize us to provide certain information on you and your Account to our affiliates and others, including any company whose name or mark may appear on the Cards. Complete details regarding our rights to share information and your right to opt-out of certain information being shared is provided to you when you first receive an Agreement and at least once each calendar year thereafter.

**22. Disputing Account Information Reported to Credit Bureaus.** We furnish information about your Account to credit bureaus. You have the right to dispute the accuracy of the information reported by writing us at P.O. Box 15823, Wilmington, DE 19850-5823.

**23. Changing the Terms of This Agreement.** We may change any of the terms of this Agreement, including without limitation by adding new terms or by deleting or modifying existing terms. We will notify you of any such changes as required by law. Any changes to this Agreement can apply to all outstanding unpaid indebtedness and any new transactions on your Account. We may sell or transfer your Account and any amounts owed on your Account to another person at any time. If we do, this Agreement will still be in effect and any successor will have our rights in this Agreement to the extent assigned.

**24. Default and Collection Costs.** Your Account will be in default and we can require that the total outstanding balance be paid if: (1) you fail to pay any amount owed under this Agreement when due; (2) you exceed the credit limit in effect on your Account; (3) you do not follow the terms of this Agreement; (4) your ability to pay us is materially impaired (including, but not limited to, bankruptcy or insolvency proceedings that are initiated by or against you); or (5) you default on any other loan or credit obligation you have with us or another creditor. We do not have to notify you or demand payment in order to take this action. If you are in default, we may, as permitted by law: cancel your credit privileges and require you to pay the unpaid balance immediately; require you to pay interest at the rate of two percent (2%) a month on the unpaid balance when we deem your Account to be six or more billing cycles past due; and require you to pay reasonable attorney's fees, any court costs and other collection costs incurred by us in the collection of any amounts you owe under this Agreement.

**25. Cancellation.** We may close your Account at any time. You will be responsible for repaying any Purchases, Advances or other outstanding charges that are still due on your Account. Your Card is issued as a way of letting you use your Account. It may not be transferred. If we request the Card(s), you must return them. Any services not described in this Agreement that may be provided from time to time in connection with the Account are not part of this Agreement and may be changed or cancelled at any time without notice or refund.

**26. Governing Law. This Agreement is governed by the laws of the United States and the State of Delaware.** Any dispute concerning any item in this Agreement will be resolved by those laws.

**27. Telephone Monitoring.** You agree that your telephone communications with us may be monitored and recorded to improve customer service and security.

**28. Delayed Enforcement.** We may delay enforcing or not enforce any of our rights under this Agreement without losing any of them.

**29. Severability.** The invalidity of any provision of this Agreement shall not affect the validity of any other provision.

4

5

30. **Consumer Reports.** We may obtain consumer credit reports from credit bureaus on you at any time in connection with any extension of credit on your Account, to review your Account, or for other permitted purposes.

## SPECIAL RATES

1. **Special Rates.** From time to time, we may offer you special Periodic Rates and terms on your Account, either for balance transfer transactions using special checks or other written request forms we provide or verbal requests for such transfers which we agree to honor (referred to as "Balance Transfers" for purposes of this Agreement) or for other offers on your Account such as introductory, promotional or other reduced rate offers. If we do, we will advise you of the special rates, how long they will be in effect, the balances to which they will apply, and the rates that will apply after the special rates expire. The terms of this Agreement apply to any such special rates. If a special rate is variable, then the "Variable Rate" terms of this Agreement (including the Pricing Schedule) will apply. You may lose any special rate that is offered you and regular/standard Preferred Pricing will apply, if you fail to make any required minimum payment by the Payment Due Date. You may lose regular/standard Preferred Pricing and Non-Preferred Pricing will apply, if you fail to meet the conditions of the "Preferred Customer Pricing Eligibility" section of this Agreement.

2. **Balance Transfer Transactions.** Balance Transfer transactions are treated as Purchases except as noted in this Agreement or any offer we make to you. These transactions will not be eligible for the grace period for Purchases, except as stated in the terms of any Balance Transfer offer made to you. We may identify Balance Transfers and the related promotional balances by different terms such as "Transferred Balance" or "Balance Transfer." If a check or other form of transfer for a Balance Transfer transaction is used to pay any amounts you owe to any JPMorgan Chase bank or company, is made payable to cash, is received by us and posted to your Account after the expiration date of the offer, is otherwise used in a way that does not transfer balances you owe to other creditors to your Account, or is used in any way not specified in the promotional offer we make you, we reserve the right to refuse to honor that Balance Transfer transaction or to treat it as an Advance.

3. **Transaction Fee for Balance Transfer Transactions.** For each Balance Transfer transaction described in any offer we may make to you, we may charge a Transaction Fee **FINANCE CHARGE** in the amount disclosed in Pricing Schedule Box 9. This fee may be reduced in our sole discretion in any offer we make to you. Transaction Fees are part of the Finance Charge. The addition of Balance Transfer Transaction Fees may cause the Annual Percentage Rate for Balance Transfer transactions to exceed the nominal Annual Percentage Rate shown on your statement.

## TERMS FOR ADVANCES

1. **Advances.** An Advance is a cash loan or similar transaction. You may take an Advance as follows. 1) Using your Checks. These Checks may only be used by the person(s) whose names are pre-printed on the Checks. We will not certify these Checks. 2) Using any of our ATM's or any ATM, which may be provided for your use by another financial institution or company. 3) Using a Cash Advance slip. Cash Advance slips may be obtained from any of our branches or from any bank that accepts the Card. 4) Using the official check mailed to you in response to your request. 5) Using any other service that may be connected to your savings or checking accounts, which may be offered by us, that allows you to take Advances on this Account. 6) Entering into transactions that involve the purchase of items convertible to cash or similar transactions, which we may treat as Advances, including but not limited to wire transfers, money orders, travelers checcques, gaming transactions, and tax payments. Advances may also be referred to as Cash Advances or Cash.

2. **Declined Check Fee.** You will be charged the fee disclosed in Pricing Schedule Box 10 for each Check or Balance Transfer check issued which cannot be processed because you are over your credit line, or would be if such check were processed, or your Account is delinquent or closed.

3. **Stop Payment Fee.** You will be charged the fee disclosed in Pricing Schedule Box 10 for each request you make for us to stop payment on a Check or other form of Advance we make on your behalf or to cancel a stop payment request. You must provide us with any information we reasonably require in order to process your stop payment or cancellation request. We do not have to honor any stop payment or cancellation request unless we have a reasonable opportunity to act on it before the Check or other form of Advance is paid or approved for payment. We will not be liable in any way for any stop payment or cancellation request that we honor or fail to honor if we used ordinary care.

4. **Limits on Advances.** For Advances taken from an ATM, there is a limit for each transaction and a daily limit that you may obtain.

5. **Service Charge/Transaction Fee for Advances.** For each Advance, there will be a Transaction Fee as disclosed in Pricing Schedule Box 9. Any minimum and maximum Transaction Fees are also disclosed in the Pricing Schedule. The total amount of Transaction Fees will be shown in the descriptive portion of your statement. Transaction Fees are part of the **FINANCE CHARGE**. The addition of Transaction Fees may cause the Annual Percentage Rate on Advances to exceed the nominal Annual Percentage Rate shown on your statement.

6. **Our Responsibilities to Honor Checks.** We may not accept your checks if: 1) by paying a Check or our check you would go over your credit line; 2) your Check or payment check is postdated; 3) your Cards or Checks have been reported lost or stolen; 4) your Account has been cancelled or has expired. If a postdated check is paid and as a result any other check is returned or not paid, we are not responsible. You may not use a Check to pay any amount you owe under this Agreement.

Case 2:07-cv-04103-NKL    Document 11-2    Filed 06/20/07    Page 5 of 10

## TERMS FOR PURCHASES

You may use your Account to purchase or lease goods and services or for lodging services when making guaranteed reservations or advance deposits.

## TERMS FOR BALANCE TRANSFERS, ADVANCES AND PURCHASES

**1. Calculation of Finance Charge for Balance Transfers, Advances and Purchases.** That portion of the Finance Charge which is determined by using the daily Periodic Rate is calculated separately for Balance Transfers, Advances and Purchases, but using the same method (generally known as the "average daily balance, including new transactions" method). Separate average daily balances (which may be referred to as "Finance Charge Balances") are calculated for Balance Transfers, Advances and Purchases, and each such balance is multiplied by the applicable daily Periodic Rate. Subject to the grace period for Purchases described below, Finance Charges accrue on Purchase, Advance and Balance Transfer transactions and fees beginning on the date the transaction occurs or on the first day of the billing cycle it is received by us (whichever is later), or, at our option, the date the transaction is posted to your Account. Finance Charges continue to accrue until payment in full is received.

We determine each of the average daily balances as follows. For each day in the billing cycle, we take that day's beginning balance for Balance Transfers, Advances and Purchases (an amount that includes accrued and/or unpaid Finance Charges, fees and other charges from previous billing cycles) and add any new Balance Transfers, Advances, Purchases, or other debits to the appropriate balance. We also add to each such balance an amount equal to the previous day's ending balance of Balance Transfers, Advances or Purchases multiplied by the applicable daily Periodic Rate (or if more than one rate could apply depending on the average daily balance reaching a certain level, the lowest applicable rate). We then subtract from the appropriate balance any payments or credits posted that day. This gives us the daily balances for Balance Transfers, Advances and Purchases. We then add all of the daily balances separately for Balance Transfers, Advances and Purchases (excluding days which end with a credit balance), and divide each sum by the number of days in the billing cycle. This gives us the average daily balances for Balance Transfers, Advances and Purchases. All fees charged to your Account are added to the appropriate Purchase balance, except for any Transaction Fee that is added to the appropriate Purchase, Advance or Balance Transfer balance. This Agreement provides for the compounding of Finance Charges.

Then we multiply each average daily balance by the applicable daily Periodic Rate, and then by the number of days in the billing cycle. The daily Periodic Rate will equal 1/365th of the Annual Percentage Rate. The daily Periodic Rate and Annual Percentage Rate are disclosed in the applicable portion of the Pricing Schedule, as may be amended from time to time. These FINANCE CHARGES determined by Periodic Rate for Balance Transfers, Advances and Purchases are added to any Transaction Fee **FINANCE CHARGES** to get the combined amount of **FINANCE CHARGE** shown on your monthly statement. For Purchases only, there is a minimum **FINANCE CHARGE** of **fifty cents ($.50)** if a Finance Charge for Purchases is imposed.

There will not be a periodic rate Finance Charge on Purchases if we receive payment for the "New Balance" by the time of day on the "Payment Due Date" shown on the monthly statement. (This is known as the "grace period.") You may also avoid Finance Charges for new Purchases for the first billing cycle in which they are posted to your Account if that cycle began with a "Previous Balance" of zero or the "Previous Balance" is reduced to zero by credits or payments we receive by the time of day on the "Payment Due Date" shown on your previous monthly statement. Payments must be in accordance with our payment instructions. There is no grace period for Balance Transfers unless the terms of the Balance Transfer offer state there will be a grace period, and for Advances.

**2. Periodic Rates.** The daily Periodic Rates applied to the Balance Transfers, Purchases and Advances average daily balances and the corresponding **ANNUAL PERCENTAGE RATES** are in the Pricing Schedule. Where the Pricing Schedule includes "Variable Rate Index and Margin" information for a particular rate that applies to your Account, that rate is a variable rate and the disclosure below regarding variable rates apply for that rate. Where the Pricing Schedule does not include such "Variable Rate Index and Margin" information for any particular rate (as indicated by an "N/A" for "not applicable" or the absence of such information in the Pricing Schedule), that rate is fixed and the disclosures below regarding variable rates do not apply. Further, for any particular rate in the Pricing Schedule that is preceded by the terms "Preferred" or "Non-Preferred", that rate is subject to the "Preferred Customer Pricing Eligibility" section that appears below. When your Account satisfies the "Preferred Customer Pricing" conditions, the "Preferred" rates may apply; when it does not, the "Non-Preferred" rates apply. If different Periodic Rates apply to balances incurred before and after a certain date or transaction, we may identify such balances in promotional offers, on statements or otherwise using terms such as "Current" or "New" to refer to balances subject to promotional rates or new transactions, and "Prior" or "Old" to refer to balances subject to regular rates or existing balances. For example, different rates may apply to balances incurred before and after the date a Balance Transfer subject to a promotional rate offer posts to your Account, or to balances incurred before and after your Account becomes eligible for Preferred rates after a Non-Preferred rate was in effect. If the Periodic Rate for one type of balance on your Account is the same as the Periodic Rate for another balance, we may combine them and refer to those combined balances as Purchases, Balance Transfers or Advances as applicable.

**3. Variable Rates.** If the daily Periodic Rate and corresponding **ANNUAL PERCENTAGE RATE** that apply to your Account are variable rates (see the Pricing Schedule), they may

8

9

Case 2:07-cv-04103-NKL    Document 11-2    Filed 06/20/07    Page 6 of 10

increase or decrease from one billing cycle to another. These rates are based on the value of an index (the "Index") to which we add a margin. The Index and margin are in the Pricing Schedule. The Index plus the margin determine the nominal **ANNUAL PERCENTAGE RATE.**

If the Index is not published on the relevant date, the Index we use in setting the daily Periodic Rate for Purchases, Balance Transfers and/or Advances on your Account will be the Prime Rate published in *The New York Times* or any other newspaper of national circulation selected by us. For purposes of this Agreement, the Index is merely a pricing index. It is not, and should not be considered by you to represent, the lowest or the best interest rate available to a borrower at any particular bank at any given time.

The daily Periodic Rate for Balances Transfers, Purchases and/or Advances increases when the Index increases on the relevant date, and decreases when the Index decreases on the relevant date. An increase in the rate may cause you to pay a larger Finance Charge and a higher minimum monthly payment. A decrease in the rate may cause you to pay a smaller Finance Charge and a lower minimum monthly payment. Any limit on the amount by which the daily Periodic Rate and the corresponding Annual Percentage Rate may change at any one time or over the life of your Account is set forth in the Pricing Schedule. If no limit appears for any particular rate, then that rate has no limit by which it may change.

**4. Preferred Customer Pricing Eligibility.** If "Preferred" and "Non-Preferred" rates appear in the Pricing Schedule, this section applies to your Account. Your Account will be reviewed every month on your Statement Closing Date to determine its continued eligibility for the Preferred or Non-Preferred rates. On each monthly review, we may change your interest rates and impose a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) described in your Agreement for each occurrence when you do not meet the conditions described below to be eligible for Preferred rates. Any changes in your interest rates as a result of the monthly reviews for Preferred or Non-Preferred rates will be effective with the billing cycle ending on the review date.

To be eligible for Preferred rates, the following conditions must be met as of the review date: you have made at least the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors; the credit limit on your Account has not been exceeded; and any payment on your Account has not been returned unpaid.

If you do not meet all of these conditions, then you will be in default under this Agreement and your Account may lose its Preferred rates. In this event, a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) will apply to all existing and new balances on your Account, and these balances will remain subject to a Non-Preferred rate until they are paid in full. When we review your Account in subsequent monthly reviews, your Account may again be eligible for Preferred rates for new Purchases, new Balance Transfers and new Advances if, for a time period not to exceed 12 months, the following conditions are met: your Account is open, you have made the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors, the credit limit on your Account has not been exceeded and any payment on your Account has not been returned unpaid. Notwithstanding the above, we may waive our rights, such as our right to enforce a Non-Preferred rate on existing and new balances until paid in full or to enforce any minimum Non-Preferred rate. However, if we do waive any of our rights and there is another occurrence when you do not meet the conditions described above to be eligible for Preferred rates, we may again impose a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) on all existing and new balances until they are paid in full.

We may obtain consumer credit reports from credit bureaus on you at any time in the future. We may use the reports and their contents, as well as information about your Account including its payment and/or usage history and your other relationships with us and our affiliates, to review your Account including for the purposes of determining its eligibility for Preferred rates and of establishing the Non-Preferred rates that may apply to your Account.

### ARBITRATION AGREEMENT

IT IS IMPORTANT THAT YOU READ THIS ARBITRATION AGREEMENT CAREFULLY. IT PROVIDES THAT YOU MAY BE REQUIRED TO SETTLE A CLAIM OR DISPUTE THAT IS COVERED BY THIS ARBITRATION AGREEMENT THROUGH ARBITRATION, EVEN IF YOU WOULD PREFER TO LITIGATE THE CLAIM IN A COURT. YOU ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE SUCH CLAIMS IN A COURT OR BEFORE A JURY OR TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR OTHER REPRESENTATIVE ACTION WITH RESPECT TO SUCH A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION, MAY NOT BE AVAILABLE IN ARBITRATION OR MAY BE MORE LIMITED. CERTAIN CLAIMS BY EITHER OF US AGAINST THE OTHER SEEKING UP TO $25,000, EXCLUDING INTEREST, COSTS AND FEES, MAY BE RESOLVED BY LITIGATION AND NOT ARBITRATION.

**1. Binding Arbitration.** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1-16 as it may be amended. This Arbitration Agreement sets forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

**2. Claims Covered.** Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which it is used) by either you or us against the other, or against the employees, agents, or assigns of the other arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account, will, at the

10

11

Case 2:07-cv-04103-NKL   Document 11-2   Filed 06/20/07   Page 7 of 10

election of either you or us, be resolved by binding arbitration. This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. As used in this Arbitration Agreement, the term "Claim" is to be given the broadest possible meaning. Notwithstanding the foregoing, a Claim may be resolved by litigation and is not subject to arbitration under this Arbitration Agreement if (1) the only remedy that will be sought by either of the parties is monetary damages; (2) neither party will seek a recovery in excess of $25,000, excluding interest, costs and fees; and (3) the only parties to the litigation will be you and us. If one party wants a Claim to be resolved by arbitration, but the other party believes the Claim may be litigated subject to this small claims exception, the party seeking arbitration may require reasonable assurance from the other party that the conditions are true and that the party wishing to resolve the Claim by litigation will take no action now or in the future to change the nature of the Claim so that it would no longer meet the conditions of this small claims exception. If such reasonable assurance is not provided, the party seeking such assurance may require the Claim to be resolved by arbitration.

As used in this Arbitration Agreement, the term "Claims" includes claims that arose in the past, or arise in the present or the future. If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action. The only Claims that may be joined in an individual action under this Arbitration Agreement are (1) those brought by us against you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy or (2) those brought by you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy against us. This means that even if a class action lawsuit or other representative action, such as those in the form of a private attorney general action, is filed, any Claim between us related to the issues raised in such lawsuits will be subject to arbitration if you or we so elect. Claims subject to arbitration include Claims that are made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties.

For the purposes of this Arbitration Agreement, "we" and "us" means Chase Manhattan Bank USA, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, any purchaser of your Account, and all of their officers, directors, employees, agents, and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the Account (including but not limited to credit bureaus, merchants that accept any credit device issued under the Account, rewards programs and enrollment services, credit insurance companies, debt collectors, and all of their officers, directors, employees, agents and representatives) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

**3. Initiation of Arbitration.** The party filing an arbitration must choose one of the following three arbitration administrators: American Arbitration Association; JAMS; or National Arbitration Forum. However, if we elect an administrator, you will have ten days after receiving notice of our election to request that the arbitration be conducted pursuant to rules of one of the other two arbitration administrators. To exercise your choice, you must notify us of your choice by writing us at P. O. Box 15933, Wilmington, DE 19850-5933. Send us a copy of the notice you received and state which of the other two arbitration administrators you choose. These administrators are independent from us. The administrator does not conduct the arbitration. Arbitration is conducted under the rules of the selected administrator by an impartial third party chosen in accordance with this Arbitration Agreement and rules of the selected administrator. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitration administrator within the federal judicial district in which you reside at the time the Claim is filed, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration administrators, information about arbitration and arbitration fees, and instructions for initiating arbitration by contacting the arbitration administrators.

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605
Web site: www.adr.org
800-778-7879

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610
Web site: www.jamsadr.com
800-352-5267

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
Web site: www.arbitration-forum.com
800-474-2371

**4. Procedures and law applicable in arbitration.** A single, neutral arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitrator will be selected in accordance with the rules of the arbitration administrator. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are

12

13

Case 2:07-cv-04103-NKL   Document 11-2   Filed 06/20/07   Page 8 of 10

inconsistent with this Arbitration Agreement, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. The arbitrator may award punitive damages or attorney fees, if such damages are authorized by law. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

**5. Costs.** At your written request, we will advance any reasonable arbitration filing fee, or administrative and hearing fees that you are required to pay to pursue a Claim in arbitration up to the amount of $500. We will reimburse you for the initial fee if you paid it and you prevail on your Claim. If there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party.

**6. Enforcement, finality, appeals.** You or we may bring an action including a summary or expedited motion to compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if any such Claims are part of a lawsuit. Failure or forbearance to enforce this Arbitration Agreement at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any additional or different agreement between you and us regarding arbitration must be in writing. The arbitrator's decision will be final and binding, except for any right of appeal under the FAA. In addition, the non-prevailing party may appeal any award that exceeds $100,000 or that includes an award of punitive damages. Any request for an appeal must be filed in writing with the same arbitration administrator within 30 days of the receipt by the non-prevailing party of notice of the original award. The appeal shall be heard before a panel of three neutral arbitrators designated by the same arbitration administrator. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the majority vote. The cost of the appeal imposed by the arbitration administrator shall be borne by the appealing party. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction.

**7. Severability, survival.** This Arbitration Agreement shall survive: (i) termination or changes in the Cardmember Agreement, the Account and the relationship between you and us concerning the Account, such as the issuing of a new account number or the transferring of the balance in the Account to another account; (ii) the bankruptcy of any party; and (iii) any transfer, sale, or assignment of your Account, or any amounts owed on your Account, to any other person. If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

---

**FOR OHIO RESIDENTS.** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio civil rights commission administers compliance with this law.

---

### IN CASE OF ERRORS OR INQUIRIES ABOUT YOUR BILL
### YOUR BILLING RIGHTS-KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill after the word(s) "Questions" or "Send Inquiries To:." Write to us no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

Case 2:07-cv-04103-NKL    Document 11-2    Filed 06/20/07    Page 9 of 10

### Your Rights and Our Responsibilities After We Receive Your Written Notice

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obliged to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

### Special Rule for Credit Card Purchases

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and
(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

© 2002 Chase Manhattan Bank USA, N.A. All Rights Reserved.

Case 2:07-cv-04103-NKL   Document 11-2   Filed 06/20/07   Page 10 of 10