# Exhibit 2



September, 2002

26204

# ARBITRATION AGREEMENT AND CHANGE IN TERMS NOTICE

We would like to explain certain changes in the terms of your Cardmember Agreement ("Agreement"), including the addition of an Arbitration Agreement. Some of the terms in this Notice may already be in effect on your Account. Any terms on your Account not changed here remain in effect. The changes described below will take effect for billing cycles ending November 1, 2002 and thereafter. The changes will apply for all existing and future balances on your Account.

There are 2 sections below that describe the changes. The first is the Arbitration Agreement section, and the second is the Other Changes to your Agreement section. After those 2 sections, under the heading Your Rights to Choose Not to Accept the Changes in this Notice, please read about your rights to choose not to accept these changes and how to exercise those rights.

## ARBITRATION AGREEMENT.

A new section is added to your Agreement that will read as follows:

### ARBITRATION AGREEMENT

IT IS IMPORTANT THAT YOU READ THIS ARBITRATION AGREEMENT CAREFULLY. IT PROVIDES THAT YOU MAY BE REQUIRED TO SETTLE A CLAIM OR DISPUTE THAT IS COVERED BY THIS ARBITRATION AGREEMENT THROUGH ARBITRATION, EVEN IF YOU WOULD PREFER TO LITIGATE THE CLAIM IN A COURT. YOU ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE SUCH CLAIMS IN A COURT OR BEFORE A JURY OR TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR OTHER REPRESENTATIVE ACTION WITH RESPECT TO SUCH A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION, MAY NOT BE AVAILABLE IN ARBITRATION OR MAY BE MORE LIMITED. CERTAIN CLAIMS BY EITHER OF US AGAINST THE OTHER SEEKING UP TO $25,000,

---

The fee will not be owed if your request reveals a billing error or unauthorized use on your Account as defined by the Federal Reserve Board's Regulation Z.

* Card Replacement Fee. A new section is added to your Agreement that will read as follows:

You may be charged a Card Replacement fee of $10 for any special services such as obtaining any Card on an expedited basis.

* Immediate Phone Payment Fee. A new section is added to your Agreement that will read as follows:

We may in our discretion permit you to make payments by authorizing us on your behalf to transfer funds from a deposit or other account to your Account. For each such payment, you will be charged an Immediate Phone Payment processing fee of $12.

* Minimum Payment. The "Minimum Payment" section of your Agreement will be modified by adding a sentence that states that in any given month that your current minimum payment calculated using a percentage of the New Balance is less than your total Finance Charges billed, the Minimum Payment will be equal to your total Finance Charges billed rounded up to the nearest dollar. The additional sentence will read as follows:

If the Minimum Payment as calculated herein is less than the Total Finance Charge as shown on your statement, your Minimum Payment for that statement instead will equal the Total Finance Charge (rounded up to the nearest dollar).

The other terms and conditions of your Agreement related to your Minimum Payment, such as our right to add any past due amounts, will still apply.

### YOUR RIGHTS TO CHOOSE NOT TO ACCEPT THE CHANGES IN THIS NOTICE.

The changes described in this Notice will not become effective if you send us a written letter that you choose not to accept them. You may choose not to accept the Arbitration Agreement section, the Other Changes to your Agreement section, or both. If the only choice you make is not to accept the Arbitration Agreement section, your Account will remain open if it is open at the time you choose. If your Account is closed, it will remain closed. If you do not accept the Other Changes to your Agreement section, your Account will be closed to further

---

use (if it is not already closed). In any event, we must receive your letter no later than October 25, 2002. In your letter please include your name, address, account number and a statement that you do not want the Arbitration Agreement section, the Other Changes to your Agreement section, or both sections, to apply to your Account. If you do not specify which sections you choose not to accept, we will assume that you chose not to accept both sections and your Account will be closed. Your letter must be mailed to Chase Manhattan Bank USA, N.A., P.O. Box 15006, Wilmington, DE 19850-9942. We must receive your written letter by the time indicated and at the address indicated or your choice(s) will not be effective; it is not sufficient to telephone us. If your letter is received by October 25, 2002 and you do not accept the Other Changes to your Agreement section, the changes in that section described above will not apply to your Account and you must pay off any outstanding balances on your Account in accordance with the payment and other applicable terms of your Agreement.

Please retain this Notice for your records.

Chase Manhattan Bank USA, N.A.

© 2002 Chase Manhattan Bank USA, N.A. All Rights Reserved.

CCSI670 (8-02)

Case 2:07-cv-04103-NKL   Document 11-3   Filed 06/20/07   Page 2 of 5

EXCLUDING INTEREST, COSTS AND FEES, MAY BE RESOLVED BY LITIGATION AND NOT ARBITRATION.

### 1. Binding Arbitration.

This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1-16 as it may be amended. This Arbitration Agreement sets forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

### 2. Claims Covered.

Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which it is used) by either you or us against the other, or against the employees, agents, or assigns of the other arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account, will, at the election of either you or us, be resolved by binding arbitration. This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. As used in this Arbitration Agreement, the term "Claim" is to be given the broadest possible meaning. Notwithstanding the foregoing, a Claim may be resolved by litigation and is not subject to arbitration under this Arbitration Agreement if (1) the only remedy that will be sought by either of the parties is monetary damages; (2) neither party will seek a recovery in excess of $25,000, excluding interest, costs and fees; and (3) the only parties to the litigation will be you and us. If one party wants a Claim to be resolved by arbitration, but the other party believes the Claim may be litigated subject to this small claims exception, the party seeking arbitration may require reasonable assurance from the other party that the conditions are true and that the party wishing to resolve the Claim by litigation will take no action now or in the future to change the nature of the Claim so that it would no longer meet the conditions of this small claims exception. If such reasonable assurance is not provided, the party seeking such assurance may require the Claim to be resolved by arbitration.

As used in this Arbitration Agreement, the term "Claims" includes claims that arose in the past, or arise in the present or the future. If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action. The only Claims that may be joined in an individual action under this Arbitration Agreement are (1) those brought by us against you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy or (2) those brought by you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy against us. This means that even if a class action lawsuit or other representative action, such as those in the form of a private attorney general action, is filed, any Claim between us related to the issues raised in such lawsuits will be subject to arbitration if you or we so elect. Claims subject to arbitration include Claims that are made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties.

For the purposes of this Arbitration Agreement, "we" and "us" means Chase Manhattan Bank USA, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, any purchaser of your Account, and all of their officers, directors, employees, agents, and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the Account (including but not limited to credit bureaus, merchants that accept any credit device issued under the Account, rewards programs and enrollment services, credit insurance companies, debt collectors, and all of their officers, directors, employees, agents and representatives) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

### 3. Initiation of Arbitration.

The party filing an arbitration must choose one of the following three arbitration administrators: American Arbitration Association; JAMS; or National Arbitration Forum. However, if we elect an administrator, you will have ten days after receiving notice of our election to request that the arbitration be conducted pursuant to rules of one of the other two arbitration administrators. To exercise your choice, you must notify us of your choice by writing us at P.O. Box 15933, Wilmington, DE 19850-5933. Send us a copy of the notice you received and state which of the other two arbitration administrators you choose. These administrators are independent from us. The administrator does not conduct the arbitration. Arbitration is conducted under the rules of the selected administrator by an impartial third party chosen in accordance with this Arbitration Agreement and rules of the selected administrator. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitration administrator within the federal judicial district in which you reside at the time the Claim is filed, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration administrators, information about arbitration and arbitration fees, and instructions for initiating arbitration by contacting the arbitration administrators.

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605
Web site: www.adr.org
800-778-7879

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610
Web site: www.jamsadr.com
800-352-5267

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
Web site: www.arbitration-forum.com
800-474-2371

**4. Procedures and law applicable in arbitration.**

A single, neutral arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitrator will be selected in accordance with the rules of the arbitration administrator. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Arbitration Agreement, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. The arbitrator may award punitive damages or attorney fees, if such damages are authorized by law. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

**5. Costs.**

At your written request, we will advance any reasonable arbitration filing fee, or administrative and hearing fees that you are required to pay to pursue a Claim in arbitration up to the amount of $500. We will reimburse you for the initial fee if you paid it and you prevail on your Claim. If there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party.

**6. Enforcement, finality, appeals.**

You or we may bring an action including a summary or expedited motion to compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if any such Claims are part of a lawsuit. Failure or forbearance to enforce this Arbitration Agreement at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any additional or different agreement between you and us regarding arbitration must be in writing. The arbitrator's decision will be final and binding, except for any right of appeal under the FAA. In addition, the non-prevailing party may appeal any award that exceeds $100,000 or that includes an award of punitive damages. Any request for an appeal must be filed in writing with the same arbitration administrator within 30 days of the receipt by the non-prevailing party of notice of the original award. The appeal shall be heard before a panel of three neutral arbitrators designated by the same arbitration administrator. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the majority vote. The cost of the appeal imposed by the arbitration administrator shall be borne by the appealing party. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction.

**7. Severability, survival.**

This Arbitration Agreement shall survive: (i) termination or changes in the Cardmember Agreement, the Account and the relationship between you and us concerning the Account, such as the issuing of a new account number or the transferring of the balance in the Account to another account; (ii) the bankruptcy of any party; and (iii) any transfer, sale, or assignment of your Account, or any amounts owed on your Account, to any other person. If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

**OTHER CHANGES TO YOUR AGREEMENT.**

• **Regular Preferred Interest rate for Advances and Prime Rate Index.** The regular Preferred interest rate for Advances will be changed to equal a variable rate of the Prime Rate Index plus 11.99%, with a minimum rate of a nominal ANNUAL PERCENTAGE RATE of 19.99% (daily periodic rate of .054776). The Variable Rate section of your Agreement applies to these rates. The Prime Rate Index for these rates, and all other variable rates in your Agreement, will be the highest Prime Rate published in the "Money Rates" table of *The Wall Street Journal* on the last business day of each calendar month. The new Preferred Advances rate may vary based on changes in the Prime Rate Index, subject to the minimum rate. Based on the current Prime Rate Index, we estimate that as of the effective date of this change your new Preferred Advances rate will be the minimum rate (19.99% APR).

• **Regular Preferred Interest rate for Advances not changed for certain accounts.** If your current Preferred Advances interest rate is a variable rate that is higher than the Prime Rate Index plus 11.99%, or if it is a fixed rate that is higher than 19.99% APR, then the new Preferred Advances interest rate will not apply to your Account and your current Preferred Advances interest rate will remain in effect. However, the Prime Rate Index for your current Preferred Advances interest rate (if it is a variable rate) will be the Prime Rate Index described above.

Case 2:07-cv-04103-NKL   Document 11-3   Filed 06/20/07   Page 4 of 5

- **Non-Preferred minimum interest rate, interest rate margin and Prime Rate Index.** We are changing the minimum rate for your existing variable Non-Preferred interest rate to a fixed nominal ANNUAL PERCENTAGE RATE of 22.99% (daily periodic rate of .0629%). The Non-Preferred rate applies to all balances on your Account when it is not in good standing under the conditions described in the "Preferred Customer Pricing Eligibility" section of your Agreement. Your existing variable Non-Preferred rate will continue to be up to the Prime Rate Index plus your existing margin and may vary based on changes in the Prime Rate Index, subject to the minimum rate. The Prime Rate Index for the Non-Preferred new rate will be the Prime Rate Index described above. Based on the current Prime Rate Index, we estimate that as of the effective date of this change your Non-Preferred rate will be the minimum rate (22.99% APR).

- **Non-Preferred interest rate added for certain accounts.** If the current Agreement for your Account does not have in effect a "Preferred Customer Pricing Eligibility" section that describes how interest rates are determined in part by whether your Account is or is not in good standing, this section will be added to your Agreement and is described below. For such accounts, your variable Non-Preferred interest rate will be up to the Prime Rate Index described above plus 14.99%, subject to the minimum rate described in the paragraph above. The Variable Rate section of your Agreement applies to this Non-Preferred rate. Based on the current Prime Rate Index, we estimate that as of the effective date of this change your Non-Preferred rate will be the minimum rate (22.99% APR).

- **Preferred Customer Pricing Eligibility.** The "Preferred Customer Pricing Eligibility" section of your Agreement will be revised to provide that existing and new balances on your Account when a Non-Preferred rate is in effect will remain subject to the Non-Preferred rate until they are paid in full unless we waive the right to enforce that rate. If your Account meets the conditions for Preferred rates for a time period not to exceed 12 months, it may be eligible for Preferred rates again on new transactions. Historical information that precedes this change may be used to determine whether or not your Account meets the conditions of the revised (or new) section. This section will be revised to read as follows.

**Preferred Customer Pricing Eligibility.** Your Account will be reviewed every month on your Statement Closing Date to determine its continued eligibility for the Preferred or Non-Preferred rates. On each monthly review, we may change your interest rates and impose a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) described in your Agreement for each occurrence when you do not meet the conditions described below to be eligible for Preferred rates. Any changes in your interest rates as a result of the monthly reviews for Preferred or Non-Preferred rates will be effective with the billing cycle ending on the review date.

To be eligible for Preferred rates, the following conditions must be met as of the review date: you have made at least the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors; the credit limit on your Account has not been exceeded; and any payment on your Account has not been returned unpaid.

If you do not meet all of these conditions, then you will be in default under this Agreement and your Account may lose its Preferred rates. In this event, a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) will apply to all existing and new balances on your Account, and these balances will remain subject to a Non-Preferred rate until they are paid in full. When we review your Account in subsequent monthly reviews, your Account may again be eligible for Preferred rates for new Purchases, new Balance Transfers and new Advances if, for a time period not to exceed 12 months, the following conditions are met: your Account is open, you have made the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors, the credit limit on your Account has not been exceeded and any payment on your Account has not been returned unpaid. Notwithstanding the above, we may waive our rights, such as our right to enforce a Non-Preferred rate on existing and new balances until paid in full or to enforce any minimum Non-Preferred rate. However, if we do waive any of our rights and there is another occurrence when you do not meet the conditions described above to be eligible for Preferred rates, we may again impose a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) on all existing and new balances until they are paid in full.

We may obtain consumer credit reports from credit bureaus on you at any time in the future. We may use the reports and their contents, as well as information about your Account including its payment and/or usage history and your other relationships with us and our affiliates, to review your Account including for the purposes of determining its eligibility for Preferred rates and of establishing the Non-Preferred rates that may apply to your Account.

- **Late Payment Fee.** The Late Payment Fee in your Agreement will be changed as follows. The Late Payment Fee will be determined based on the Previous Balance on your monthly statement that shows the Late Payment Fee. That Previous Balance is the closing balance of your prior monthly statement for which we did not receive timely payment. The Late Payment Fee will also be determined based on whether or not a Non-Preferred interest rate is in effect on your monthly statement. The Late Payment Fee will be:

| Previous Balance | Late Fee |
|---|---|
| up to $150.00 | $15 |
| $150.01 up to $1,200.00 | $29 |
| $1,200.01 or greater | $35 |
| Non-Preferred rate in effect | $35 |

This fee is owed if we do not receive the required minimum payment, in accordance with our payment instructions, by the time of day on the payment due date shown on your monthly statement.

- **Stop Payment Fee.** The Stop Payment Fee in your Agreement will be changed to $29, if it has not been changed already. This fee will be imposed for each request made to stop payment on any check or other form of Advance drawn on your Account, or to withdraw a stop payment request.

- **Copy Fee.** The "Sales Slip or Duplicate Statement Fee" section in your Agreement will be amended to provide that the fee provided in this section will also be charged for any other record or document that we provide at your request. The fee will be $5 for each copy of any such record or document, and will remain $10 for an original sales slip.

Case 2:07-cv-04103-NKL   Document 11-3   Filed 06/20/07   Page 5 of 5